ADJUDGED IN

# THE COURT OF CHANCERY

OF

# THE STATE OF NEW JERSEY.

## 1924.

EDWIN ROBERT WALKER, CHANCELLOR.

EDMUND B. LEAMING, VIVIAN M. LEWIS, JOHN H. BACKES,
JOHN GRIFFIN, JOHN E. FOSTER, MALCOLM G. BU-
CHANAN, JAMES F. FIELDER, ALONZO CHURCH,
ROBERT H. INGERSOLL AND JOHN BENTLEY,
VICE-CHANCELLORS.

In the matter of CHARLES A. RIGG, a solicitor in chancery.

[Decided January 4th, 1924.]

It is a contempt of court in a solicitor who obtains the issuance of
a writ of *habeas corpus* to fail to deliver it to the sheriff to whom it
is directed, and to advise, counsel and procure such officer to enlarge
the prisoner out of jail and produce him in court, as such writ alone
would be the sheriff's authority and protection, and production of the
body of the prisoner without the writ constitutes a permissive escape.

341

On hearing of order to show cause *In re* contempt.

Before WALKER, CHANCELLOR, and BUCHANAN, VICE-CHANCELLOR.

*Mr. Ernest Watts,* for the respondent.

Opinion by the Court.

Recently the respondent, Charles A. Rigg, Esquire, a solicitor of this court, presented to the chancellor a petition for a writ of *habeas corpus* on behalf of Reginald Branch, a prisoner in the jail of the county of Burlington, in the custody of the sheriff, and so by him imprisoned and restrained of his liberty in the jail, as it was said, he having been committed by a magistrate upon conviction of violating chapter 208—*P. L. 1921 p. 643 § 14 subd. 3*—(the act defining motor vehicles, &c., and regulating proceedings · for the violation of the same), in that Mr. Branch permitted one McCarty to operate a motor vehicle owned by him, Branch, which he, McCarty, was under the influence of intoxicating liquor; whereupon the chancellor awarded a writ of *habeas corpus* returnable forthwith, and signed the *allocatur* on the back thereof and delivered the writ to Mr. Rigg for signing and sealing by the clerk in chancery, who issued it accordingly. The writ was in the usual form, directed to the sheriff of the county of Burlington, and commanded him to have the body of Mr. Branch, together with the day and cause of his taking and detention, before the court at Trenton aforesaid, forthwith. The chancellor, however, directed Mr. Rigg to instruct the sheriff to have Mr. Branch before the court at two o'clock in the afternoon. At the time and place last mentioned the chancellor and Vice-Chancellor Buchanan appeared upon the bench, and Mr. Branch was there present in the custody of the under-sheriff, but neither Mr. Rigg nor any other solicitor appeared for Mr. Branch, and upon request from the chancellor to know if the sheriff had made return to the writ, the under-sheriff replied that neither the sheriff nor he had any writ, but were notified over the tele-

phone by Mr. Rigg to produce Mr. Branch at the time and place mentioned. The court waited until two-thirty o'clock in the afternoon, and no one appearing for Mr. Branch, the vice-chancellor drew an *alias writ of habeas corpus* directed to the sheriff, commanding him as in the original writ he was commanded, upon which the under-sheriff endorsed and signed a return upon the writ; whereupon the hearing was proceeded with, Mr. Branch representing himself. About two forty-five o'clock Mr. Rigg appeared and stated that he had telephoned the sheriff that the writ had been allowed, and that he should produce Mr. Branch before the court at Trenton at two o'clock, but that he had not delivered or sent the writ to the sheriff. The cause then proceeded further with Mr. Rigg representing Mr. Branch, who, at the conclusion of the hearing, was remanded to the custody of the sheriff and the writ of *habeas corpus* was dismissed.

The court being of opinion that the failure of Mr. Rigg to deliver the writ to the sheriff to whom it was directed, and that in advising the latter to enlarge Mr. Branch out of jail and produce him before the court, without any warrant therefor being delivered to the sheriff, and his (Mr. Rigg's) failure to appear in court representing Mr. Branch at two o'clock, constituted a contempt of the power, authority and dignity of the court of chancery, and that he, Mr. Rigg, should be charged with such contempt and required to answer therefor, and an order was thereupon made requiring Mr. Rigg to appear before this court and show cause why he should not be adjudged guilty of contempt in respect to the matters aforesaid and punished therefor. On the return of this order Mr. Rigg appeared with Mr. Watts as his counsel, and admitted the statements above made, and said, also, that at and just before two o'clock on the day of the return of the *habeas corpus,* he stood on the portico of the state house waiting for Mr. Branch to appear with the sheriff, and, not seeing them, supposed they had not arrived; that he waited a considerable time before going into court to inform the judges of such non-appearance, and, when he did appear there, he found the court in session, with Mr.

Branch at the bar and the cause proceeding. The explanation is that Mr. Branch arrived with the under-sheriff long in advance of the time of the hearing.

Now, it was the duty of Mr. Rigg at the hour of two o'clock, thinking that Mr. Branch and the sheriff had not yet arrived, to appear in court and state the fact of the non-arrival of the parties. It is quite unnecessary, however, to decide whether or not this constitutes a contempt of court, as the other matter charged against Mr. Rigg, namely, not delivering the *habeas corpus* to the sheriff, and advising him to take the prisoner out of jail and bring him to court, without the sheriff having any warrant or authority therefor in the possession, was clearly a contempt.

There being now no statute in this state which regulates the writ of *habeas corpus* when it issues out of the court of chancery by the common law (*In re Thompson, 85 N. J. Eq. 221, 234. 235, 236, 237*), we must, therefore, look to the common law for procedure.

In *29 C. J. 155 § 172*, it is laid down that the officer or other person to whom the writ of *habeas corpus* is directed *must make a return thereto* in accordance with the command of the writ. See, also, *Bac. Abr. Hab. Corp. B. 6, 7.* It is to be observed that there was a plain mandate in this writ, namely, that the sheriff have the body of Mr. Branch, *together with the day and cause of his caption and detention,* before the court. When we found that Mr. Branch was in court without the under-sheriff having in his possession, as his authority and for his protection. a writ commanding Mr. Branch's production, we forthwith drew an *alias writ of habeas corpus* as above mentioned, so that the prisoner might be properly before us, and, when this was done, proceeded with the hearing.

The deliverance of a person who is lawfully imprisoned, out of prison, before such person is entitled to such deliverance, is an escape. *Bouv. Law Dict. (Rawles' rev.) 687.* And if Mr. Branch had been in prison on a *capias* in a civil case the sheriff would have been liable to the plaintiff for the

whole debt. *Browning's Executor* v. *Rittenhouse, 40 N. J. Law 230* (at *p. 236*).

What the respondent, Mr. Rigg, did was to counsel and procure the sheriff to be at least technically guilty of a permissive escape. It was not a voluntary escape, for that is where the officer charged with the custody of a prisoner knowingly gives him his liberty with intent; and it is not a negligent escape, for that is where the imprisoned party escapes against the will of the person who imprisons him. *21 C. J. 827* §§ *2, 3.* A constructive escape takes place when the prisoner obtains more liberty than the law allows, although he still remains in custody. *21 C. J. 827* § *5 note 17.* At common law it is held that every liberty given to a prisoner, not authorized by law, is an escape. *2 Whart. Cr. L.* § *2612.* A sentence to a prison means the four walls of it, so that the keeper by permitting a prisoner to go at large commits escape. *2 Bish. Cr. L. (9th ed.)* § *1104.*

We acquit Mr. Rigg, who is a man of high standing and known integrity, of any intention to advise the sheriff to violate the law in thus taking Mr. Branch out of jail without his (the sheriff) having in his possession an appropriate writ out of a court of competent jurisdiction, commanding such action; but, the fact that a counselor-at-law does such a thing, calls for pointed reproof. And the members of the bar and the sheriffs and jail wardens throughout the state should know that such proceedings as the one disclosed in this case are a violation of law and liable to be followed by serious consequences.

Mr. Rigg is guilty of contempt, as lack of intent is not an excuse. He will be notified when to appear to receive the judgment of the court.